Bell, J.,
 

 dissenting. By virtue of the provisions of Section 3 of Article YI of the Constitution, the General Assembly has full power and authority to regulate the public school system of the state of Ohio. See
 
 State, ex rel. Dirs., Eastern and Western School Dists., Cincinnati,
 
 v.
 
 City of Cincinnati,
 
 19 Ohio, 178;
 
 Mills
 
 v.
 
 Board of Elections,
 
 54 Ohio St., 631, 47 N. E., 1114.
 

 Under those provisions the General Assembly may grant such authority to the boards of education of the various school districts of the state as it deems necessary and proper for the conduct of the public school system, and the boards of education can exercise such powers only as are clearly and distinctly granted. See
 
 State, ex rel. Locher, Pros. Atty.,
 
 v.
 
 Menning,
 
 95 Ohio St., 97, 115 N. E., 571;
 
 State, ex rel. Clarke,
 
 v.
 
 Cook, And.,
 
 103 Ohio St., 465, 134 N. E., 655.
 

 In 1941, the General Assembly passed House Bill No. .121 which is commonly known as the Teachers’ Tenure Act. As originally enacted it was numbered Sections 7690-1 to 7690-8, both inclusive, General Code.
 

 ’ As we construe the tenure act it provides the security of civil service to each and every teacher holding a professional, permanent or life certificate and having completed five or more consecutive years of employment by the board of education of his or her particular school district.
 

 Section 7690-2 of the act provided in part as follows:
 

 
 *254
 
 “Provided, however, that on or before September 1, 1941, a continuing contract shall be entered into by each board of education with each teacher holding a professional, permanent, or life certificate who, at the time of the passage of this act, is completing five or more consecutive years of employment by said board.”
 

 All of the necessary qualifications to entitle a teacher to a continuing contract are set forth in the statute. Can it be seriously contended that the board of education of any school district possesses authority to add any additional requirement, as a condition precedent, to the execution of a continuing contract? "We think not.
 

 Section 7690-6, General Code (now Section 4842-12, General Code), provided for the termination of such contracts by the board. The language insofar as pertinent here was as follows:
 

 “The contract of a teacher
 
 may not be terminated
 
 except for gross'inefficiency or immorality; for wilful and persistent violations of reasonable regulations of the board of education; or for other good and just cause.” (Italics ours.) .
 

 In December 1937, prior to the passage of the Teachers’ Tenure Act, the board of education of the city of Campbell adopted a rule which provides, among other things, that “women teachers’ contracts shall terminate immediately upon marriage. * * * This rule shall not apply to substitute teachers.”
 

 During the school year 1941-1942, the plaintiff-appellant was employed as a teacher under a continuing contract. During a leave of absence, on February 14, 1942, she was married. When her leave expired, at the request of the superintendent of schools, she returned to her teaching duties for the balance of the school year. Later her contract was terminated for violation of the rule as to marriage.
 

 
 *255
 
 In passing, attention should be called again to the wording of the rule, "women teachers’ contracts shall terminate
 
 immediately
 
 upon marriage. * * *” (Italics ours.)
 

 The factual situation here discloses that she knew of this rule, but that she resumed her position, after her marriage, at'the special instance and request of the superintendent of schools, and that at that time no action was taken to terminate her contract nor was she given any notice that any such action was contemplated. It was not until the next school year that her marriage was made the basis for the termination of her contract. We think that it might well be held that the rule, even if valid, was waived by the board of education in the instant case. However, our grounds for dissent are based upon more vital and fundamental considerations.
 

 We maintain that the board of education was without power or authority to enforce its rule after the passage of the tenure act. The majority of the court take the view that the rule of the board constitutes a reasonable regulation and that a violation thereof constitutes "other good and just cause” for dismissal. The quoted phrase as we construe it means some dereliction of duty which actually impairs the efficiency of the teacher, similar to those specifically enumerated. In other words the doctrine of
 
 ejusclem generis
 
 applies.
 

 That plaintiff’s efficiency was in no wise affected is best evidenced by the fact that after her marriage, at the request of the superintendent, she returned to her duties as a teacher for the balance of that school year and that no reason was assigned for the termination of her contract other than her marriage during the previous school year.
 

 It is a matter of common knowledge that thousands of women are employed by this state and its political
 
 *256
 
 subdivisions and in no instance of wbicb we have any knowledge is marriage a cause for dismissal from the public service. The General Assembly of this state has declined, up to the present time, to make marriage a cause for such dismissal.
 

 In
 
 view
 
 of the fact that women in all other branches of the public service of the state and its political subdivisions may marry and still retain their positions, an anti-marriage rule applicable to women school teachers alone is arbitrary, discriminatory and unreasonable.
 

 We are cognizant of the fact that some courts have held that a contract which provides for the dismissal of a female teacher, if she marries, is valid and does not' impose an unreasonable restraint upon marriage. Suffice it to say that such contracts at least certainly discourage marriage. There is abundant authority for the proposition that a contract in restraint of or which discourages marriage is void.
 

 In 35 American Jurisprudence, 351, Section 250, the rule is stated thus:
 

 ‘ ‘ The initial question in the consideration of whether or not a provision or condition is void because in restraint of marriage is, of course, whether or not the provision or restraint is in fact in restraint of marriage. In order that a provision in restraint of marriage be invalid it is not necessary that the restraint constitute a positive prohibition. It has been said that if the restraint is of such nature and rigidity in its requirement as to operate as a probable prohibition, it is void.”
 

 As we view the matter such a rule as is here under consideration cannot find sanction in the language of the statute nor upon any ground of sound public policy.
 

 Weygandt, C. J., concurring in the dissenting opinion of Judge Bell.
 

 
 *257
 
 It is not disputed that when a woman school teacher marries the quality of her teaching may be impaired, improved or unaffected. It would seem, therefore, that a nondiscriminatory, lawful and humane solution of the problem should require each case to be considered and decided upon the actual facts rather than by resort to the easy but invariably inequitable device of regimentation.
 

 Williams, J., concurs in the foregoing dissenting opinions.